Anthony M. Rainone, Esq. (Bar No. 24132003)
Lucas A. Markowitz, Esq. (Bar No. 023802011)
**BRACH EICHLER L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey  07068-1067
(973) 228-5700
(973) 228-7852 (facsimile)
*Attorneys for Plaintiffs LaShonda Robinson and Jassarie Sierra,
individually and on behalf of others similarly situated*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LASHONDA ROBINSON and JASSARIE SIERRA, *individually and on behalf of others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>FREEDOM HOME HEALTHCARE, INC., TARA SMITH-KEELER, CHRISTINA SANCHEZ, JOSEPH ANGELOSANTE, BARBARA S. LONDON; JOHN DOES 1-10 and ABC CORPS. 1-10.<br><br>Defendants. | Civil Action No.:<br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs LaShonda Robinson and Jassarie Sierra (collectively "Plaintiffs"), each individually and on behalf of themselves and all others similarly situated, by their attorneys Brach Eichler, LLC, complaining of Defendants Freedom Home Healthcare, Inc., Tara Smith-Keeler, Christina Sanchez, Joseph Angelosante, Barbara London, John Does 1-10, and ABC Corps. 1-10 (collectively referred to herein as "Defendants"), alleges:

**NATURE OF THE COMPLAINT**

1. This action is brought to recover unpaid minimum wages, overtime pay, and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the New Jersey

State Wage and Hour Law, N.J.S.A. 34:11-56a et seq. and N.J.A.C. 12:56 et seq. ("NJWHL") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq. ("NJWPL") on behalf of Plaintiffs against Defendants. These workers were deprived of their lawfully due wages by Defendants' willfully violating the law by misclassifying Plaintiffs and other similarly situated as overtime exempt, as well as failing to pay them lawful wages and overtime wages for "on-call" time, in both instances depriving Plaintiffs of overtime pay systematically and intentionally over several years.

2. Plaintiffs seek injunctive and declaratory relief against Defendants' unlawful actions, compensation for unpaid minimum wages, overtime pay liquidated damages, compensatory damages, interest, and attorneys' fees and costs pursuant to the FLSA, the NJWHL, and the NJWPL.

## JURISDICTION

3. This Court has subject matter jurisdiction over Plaintiffs' federal claim case pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

## VENUE

4. Venue is proper in the District of New Jersey under 28 U.S.C. §1391, as Defendants are located in the District of New Jersey and it is the location of the events that occurred giving rise to this lawsuit.

## THE PARTIES

5. Plaintiff LaShonda Robinson ("Robinson") is an individual residing at 445 D Thompson Street, Hackensack, Bergen County, New Jersey.

6. Plaintiff Jassarie Sierra ("Sierra") is an individual residing at 15 Carrelton Drive, Paterson, Passaic County, New Jersey.

7. Defendant Freedom Home Healthcare Inc. ("FHH") is a foreign corporation, organized under the laws of the State of Delaware, with a place of business located in New Jersey at One University Plaza, Suite 200, Hackensack, New Jersey 07601.

8. Defendant Tara Smith-Keeler, at all relevant times, was an employee of FHH who also is an "employer" within the meaning of the FLSA, the NJWHL, and the NJWPL with a place of business located at One University Plaza, Suite 200, Hackensack, New Jersey 07601.

9. Defendant Christina Sanchez, at all relevant times, was an employee of FHH who is also an employer within the meaning of the FLSA, the NJWHL, and the NJWPL, with a place of business located at One University Plaza, Suite 200, Hackensack, New Jersey 07601

10. Defendant Joseph Angelosante, at all relevant times, was an employee of FHH who is also an employer within the meaning of the FLSA, the NJWHL, and the NJWPL, with a residence located at 134 14th Street, Wood-Ridge, New Jersey 07075.

11. Defendant Barbara S. London, at all relevant times, was the Founder and President of FHH until her retirement in August 2017, with a residence located at 6 DaVinci Drive, Monmouth Junction, NJ 08852.

12. Defendants John Does 1-10 are persons who participated in the unlawful conduct set forth herein and who may be liable as an "employer" under the FLSA, NJWHL, and/or the NJWPL.

13. Defendants ABC Corps. are entities that may be liable as an "employer" under the FLSA, NJWHL, and/or the NJWPL for the unlawful conduct set forth herein.

## THE FACTS

14. At all relevant times, Plaintiffs and those similarly situated had an employment relationship with, and were employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), (g), the NJWHL, N.J.S.A. 34:11-56a1(f), (g) and (h) and the NJWPL, N.J.S.A. 34:11-4.1(b).

15. Upon information and belief FHH is an "enterprise engaged in interstate commerce" within the meaning of the FLSA. FHH has: (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.

16. Plaintiff Robinson worked as a care coordinator/client service representative for FHH commencing on July 6, 2012.

17. Plaintiff Robinson was laterally transferred out of care coordination at the end of November 2017. While working in a different departing because she was "good at it", Robinson was still on-call for January, February and March 2018.

18. Effective September 6, 2014, Robinson's salary was $40,882.00/annually, which is $786/week or $19.65/hour based upon a forty (40) hour workweek.

19. Effective February 27, 2015, Robinson's salary was $47,000.

20. Effective November 20, 2015, Robinson's salary was $48,409.

21. Effective July 29, 2016, Robinson's salary was $49,862.

22. Effective July 28, 2017, Robinson's salary was $52,862.

23. Plaintiff Sierra worked as a care coordinator/client service representative for FHH commencing on or about September 6, 2011.

24. Plaintiff Sierra was promoted to manager in May 2017, but returned to her coordinator position effective January 4, 2018.

25. Plaintiff Sierra resigned her employment with FHH by notice dated January 15, 2018, with an effective date of January 26, 2018. Notwithstanding, Defendants terminated Sierra immediately despite her professionalism in giving two (2) weeks advance notice of her resignation date.

26. Effective September 6, 2014, Sierra's salary was $41,618.00/annually, which is $800.35/week or $20.01/hour based upon a forty (40) hour workweek.

27. Effective April 24, 2015, Sierra's salary was $45,617.

28. Effective November 20, 2015 Sierra's salary was $46,986.

29. Effective October 6, 2016, Sierra's salary was $48,630.

30. Effective May 19, 2017, Sierra's salary was $53,630.

31. Effective August 11, 2017, Sierra's salary was $56,630.

32. The regular, seven day, 168 hour workweek at FHH was Monday through Sunday.

33. Each workweek during the three (3) years preceding the filing of this Complaint (as well as before that time period), Plaintiffs and those similarly situated worked in excess of forty (40) hours but were never paid for such overtime either at their regular rate of pay or at the overtime premium rate, which is 1.5 times their regular rate of pay under the FLSA and the NJWHL.

34. Each workweek during the three years preceding the filing of this Complaint (as well as before that time period), Plaintiffs and those similarly situated had a fixed schedule of Monday through Friday from 9:00 am to 5:00 pm ("Regular Shift"), but Plaintiffs never ended their work day at 5:00 pm due to FHH's demands that they work past 5:00pm.

35. In addition to the Regular Shift, Plaintiffs and those similarly situated were regularly scheduled to be "on-call" during various weeks throughout the year on weekdays from 5:00 pm to 9:00 am Monday through Thursday ("Weekday On-Call Shift"), for which they only received a fixed fee of $50.00 per "on-call" shift, despite the fact that they were performing the same tasks as during their Regular Shift and despite the fact that they were working the entirety of the entire Weekday On-Call Shifts.

36. During the weeks that Plaintiffs were scheduled for the Weekday On-Call Shifts, Plaintiffs worked twenty-four (24) hours per day Monday through Friday.

37. In addition to the Regular Shift and the Weekday On-Call Shift, Plaintiffs were regularly scheduled to be "on call" on Saturdays and Sundays each week and worked 5:00 pm Friday through 9:00 am Monday morning that weekend ("Weekend On-Call Shift"), for which they only received a flat fee of $100 per "on-call" shift, despite the fact that they were performing the same tasks as during their Regular Shifts and despite the fact that they were working the entirety of the entire Weekend On Call Shifts working for fifty-six (57) hours from Saturday morning until their Monday morning shift that began at 9:00 am.

38. During the weeks that Plaintiffs and those similarly situated were scheduled for the Weekday On-Call Shifts and Weekend On-Call Shifts, they would work a total of 168 hours – essentially every hour of the work week.

39. There was a rotating on-call schedule for the Weekday On-Call Shifts and the Weekend On-Call Shifts.

40. Upon information and belief and subject to further discovery, Plaintiffs and those similarly situated were regularly scheduled for two (2) full weeks per calendar month for Weekday On-Call Shifts and Weekend On-Call Shifts.

41. The on-call time was a misnomer because during the on-call shifts, Plaintiffs and those similarly situated were working the entire time and were not free to go about their business. In fact, Plaintiffs and those similarly situated were forced to remain by their phone and a computer or device with a connection to the internet and respond immediately to inquiries from their employer.

42. As a practical matter, Plaintiffs and those similarly situated were restricted from engaging in personal activities during both the Weekday On-Call Shifts and the Weekend On-Call Shifts.

- 7 -

43. As a practical matter, Plaintiffs and those similarly situated were deprived of periods of uninterrupted leisure during which they could engage in normal activities of living and were not free to effectively use the intervening periods between responding to employer demands for their own benefit. In fact, Plaintiffs were engaged to wait rather than waiting to be engaged.

44. Plaintiffs and those similarly situated regularly responded to employer inquiries and emergencies at all times during on-call shifts.

45. Plaintiffs and those similarly situated perform the exact same duties during on-call shifts as they did during their Regular Shift.

46. While on call Plaintiffs and those similarly situated were regularly unable to get at least five (5) hours of uninterrupted sleep.

47. Plaintiffs and those similarly situated were told they would be disciplined for not immediately responding to employer inquiries, no matter what time it came in.

48. As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and those similarly situated by engaging in a pattern, practice, and/or policy of violating the FLSA and NJWHL. This policy and pattern or practice includes, *inter alia*, the following:

    a. failing to pay employees minimum wage for all hours worked during some weeks; and

    b. failing to pay employees overtime pay for all hours worked over forty.

49. Defendants have engaged in this unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and the NJWHL.

50. Defendants violated the FLSA and the NJWHL by misclassifying Plaintiffs and those similarly situated as overtime exempt and failing to pay Plaintiffs anything (regular rate or overtime rate) for hours worked for 40 during the workweek.

51. FHH failed to maintain and keep time records required by the FLSA and the NJWHL. Specifically, FHH failed to maintain and keep time records reflecting the number of hours worked by Plaintiffs, their regular rate of pay, their overtime rate of pay, or any other statutory and regulatory required records under the FLSA and the NJWHL.

52. During the three (3) years preceding the filing of this lawsuit, Sierra and Robinson would submit handwritten time sheets attempting to reflect their actual hours worked, which were in excess of forty (40) hours.

53. But when Sierra and Robinson reflected their actual hours worked on the time sheet in excess of forty (40) hours, their supervisors at FHH discarded the time sheets and told them they are salaried and are not eligible for overtime.

54. For example, the then Executive Director of FHH, Tara Smith-Keeler, specifically told Sierra to only record the hours of 9:00 am to 5:00 pm on the weekly time sheets, regardless of the fact that Sierra clearly and regularly worked longer hours and of which FHH was aware and benefited.

55. In addition, upon information and belief, Christine Sanchez, the Director of Operations at FHH, knew of, condoned, and instructed Sierra's supervisors to prohibit employees like Sierra and Robinson from submitting time sheets reflecting their actual hours worked.

56. After Tara Smith-Keeler was no longer the Executive Director at FHH, Sierra complained about the time sheet interference and manipulation practice to the new Executive Director, Joe Angelosante, who responded by stating she was surprised FHH had not been sued for that practice and wanted FHH to do away with timesheets.

57. Defendant London implemented, enforced, and condoned the unlawful payroll policies and procedures are issue in this lawsuit.

58. Defendant London was aware of the actual number of hours worked by Plaintiffs and the putative collective and several times advised Plaintiffs "all the heads were in the bed" meaning that every case needed to be staffed, regardless of the time of day.

59. Defendant London also would not allow Plaintiffs or the putative collective to leave at the end of their scheduled shift if there were outstanding cases needing coverage.

## COLLECTIVE ACTION ALLEGATIONS

60. The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and similarly situated persons who are current and former employees of Defendants since the date three (3) years prior to the filing of this action who elect to opt-in to this action.

61. Pursuant to 29 U.S.C. § 216(b), Plaintiffs seeks to prosecute the claims herein as a collective action on behalf of all other persons similarly situated, which includes all other care coordinator/client service representatives who were employed by Defendants in their New Jersey based offices who were not paid minimum wage (or regular rate pay) or overtime pay at any time since three (3) years prior to the date of the filing of this lawsuit until entry of judgment herein.

62. Plaintiffs and the FLSA Collective regularly worked over forty (40) hours in a workweek, especially on weeks they were designated as on-call, and all performed the same duties as Dispatchers.

63. Plaintiffs and the FLSA Collective each received a flat rate of pay, no matter how many hours they worked, in violation of the FLSA.

64. Plaintiffs and the FLSA Collective each worked, at times, up to 168 hours per workweek.

65. Plaintiffs and the putative collective of care coordinator/client service representatives are all victims of a common practice and policy by Defendants that violated the minimum wage and overtime provisions of the FLSA and the NJWHL.

66. Specifically, Defendants' common practice and policy consisted of the following:

   a) Failure to pay Plaintiffs and the putative collective the federally (and New Jersey) required minimum wage for all hours worked.

   b) Failure to pay Plaintiffs and the putative collective their regular hourly rate as required by federal (and New Jersey) law for all hours worked.

   c) Failure to pay Plaintiffs and the putative collective a rate of time and a half of the federal (and New Jersey) minimum wage rate for all hours worked over 40 in any given work week.

   d) Failure to pay Plaintiffs and the putative collective a rate of time and a half of their regular hourly rate as required by federal (and New Jersey) law for all hours worked over 40 in any given work week.

   e) Prohibiting Plaintiffs and the putative collective from recording their actual hours worked.

   f) Failing to keep the statutorily required time records for Plaintiff and the FLSA Collective.

67. The FLSA Collective consists of employees who during their employment with Defendants worked as care coordinators/client service representatives at Defendants' New Jersey based offices under the same management and control.

68. At all times relevant, Plaintiff and the members of the FLSA Collective were not exempt from the overtime provisions of the FLSA, both because of their job duties and/or because they were not paid on a salary basis.

69. Defendants violated the FLSA by failing to pay Plaintiff and the putative FLSA Collective minimum wage and their regular rate for all hours worked, as well as failing to pay time and a half of the regular rate for all hours worked over forty (40) in any work week.

70. Defendants' violations were willful, repeated, knowing, and intentional, and significantly damaged Plaintiff and the putative FLSA Collective.

71. Pursuant to 29 U.S.C. §§ 207(a)(1) and 216(b), Defendants are liable to Plaintiff and the putative FLSA collective for the unpaid wages described above, plus additional amounts as liquidated damages, attorneys' fees and costs.

72. The FLSA Collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable by Defendants, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## COUNT ONE
### (Fair Labor Standards Act – Unpaid Minimum Wage & Overtime)

73. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein at length.

74. Defendants are required to pay Plaintiffs and the FLSA Collective minimum wage or their regular rate (whichever is higher), in addition to one and one-half (1½) times the regular rate of pay for all hours they worked in excess of forty (40) hours in a workweek, pursuant to the minimum wage and overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 206, 207.

75. Because Plaintiffs and the FLSA Collective were engaged to be waiting rather than waiting to be engaged, in addition to the fact that the workers were actually working during the on-call time periods, Defendants were required to compensate Plaintiff and the FLSA Collective for this time at their regular rate of pay.

76. Defendants, however, did not pay Plaintiffs and the FLSA Collective minimum wage, their regular hourly rate, and/or overtime as required by the FLSA but, instead, paid a flat rate below the legally required rates.

77. Defendants have failed to pay Plaintiffs and the FLSA Collective the minimum wage, regular rates, and/or overtime wages to which they are entitled under the FLSA.

78. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective minimum wage, regular rates, and/or overtime wages.

79. Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## COUNT TWO
**(New Jersey Wage and Hour Law – Unpaid Minimum Wage & Overtime)**

80. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein at length.

81. Under the NJWHL and supporting New Jersey State Department of Labor Regulations, Defendants were required to pay Plaintiffs and other non-exempt employees minimum wage or their regular rate (whichever is higher), in addition to one and one (1½) half times the regular rate of pay for all hours they worked in excess of forty (40) hours in a workweek.

82. Likewise, N.J.A.C. 12:56-5.7 recognizes that reasonable compensation for an employee who is on call "take[s] into account not only the actual time spent in answering the calls but also some allowance for the restriction on the employee's freedom to engage in personal activities resulting from the duty of answering the telephone."

83. Because Plaintiffs and the FLSA Collective were engaged to be waiting rather than waiting to be engaged, in addition to the fact that the workers were actually working during the on-call time periods, Defendants were required to compensate Plaintiffs and the FLSA Collective for this time.

84. Defendants, however, paid a flat rate well below the applicable minimum wage, regular rate, and/or overtime rate.

85. Defendants have failed to pay Plaintiffs, and other non-exempt employees who are workers, the overtime wages to which they were entitled under the NJWHL.

86. Defendants have willfully violated the NJWHL by knowingly and intentionally failing to pay Plaintiffs, and other non-exempt workers, overtime wages.

87. As a result of Defendants' willful violations of the NJWHL, the FLSA Collective suffered damages by being denied minimum wages in accordance with the NJWHL in amounts to be determined at trial, and are entitled to recovery of such amounts, pre-judgment and post-judgment interest.

## COUNT THREE
### (New Jersey Wage Payment Law – Unpaid Wages)

88. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein at length.

89. Pursuant to N.J.S.A. 34:11–4.2, the New Jersey Wage Payment Law ("NJWPL") provides that every employer is obliged "[to] pay the full amount of wages due to his employees at least twice during each calendar month[.]

90. The NJWPL further provides that "[f]or the purposes of this [A]ct, the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." N.J.S.A. 34:11–4.1(a).

91.     By failing to compensate employees for overtime worked, Defendants have willfully failed to pay Plaintiffs and the FLSA Collective the full amount of wages due and are therefore in violation of the NJWPL.

92.     As a result of Defendants' willful violations of the NJWPL, the FLSA Collective suffered damages by being denied overtime in accordance with state law in amounts to be determined at trial, and are entitled to recovery of such amounts, pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the putative FLSA Collective, respectfully requests that this Court enter a judgment as follows:

A.      Judgment in favor of Plaintiffs declaring that Defendants violated the minimum wage and overtime provisions of the Fair Labor Standards Act, the New Jersey State Wage and Hour Law and the New Jersey Wage Payment Law;

B.      Declaring that Defendants' violations of the FLSA and the NJWHL were willful;

C.      Certifying a collective under the FLSA of all care coordinators and client services representatives working in Defendants' office locations and who are victims of the same unlawful practices as Plaintiffs, as well as authorizing the issuance of notice at the earliest possible time to the workers who were employed by Defendants during the three (3) years immediately preceding the filing of this action through the present date.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to participate in this lawsuit;

D.      Awarding Plaintiffs and the FLSA Collective, damages for unpaid minimum wages and unpaid overtime wages;

E.      Awarding Plaintiffs and the FLSA Collective liquidated damages equal to the total amount of the wages found to be due, pursuant to the FLSA;

F. Awarding Plaintiffs and the FLSA Collective damages equal to the total amount of the wages found to be due, pursuant to the NJWHL;

G. Awarding Plaintiffs and the FLSA Collective pre-judgment and post-judgment interest under the FLSA and the NJWHL;

H. Awarding Plaintiffs and the FLSA Collective wages due but not paid and pre-judgment and post-judgment interest under the NJWPL;

I. Awarding Plaintiffs and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA and the NJWHL; and awarding such other and further relief as the Court deems just and proper.

                                        **BRACH EICHLER LLC**
                                        Attorneys for Plaintiff

                                        By: /s/ Anthony M. Rainone
                                               Anthony M. Rainone, Esq

## DEMAND FOR JURY TRIAL

Demand is hereby made for a trial by jury on all issues and claims so triable.

**BRACH EICHLER LLC**
Attorneys for Plaintiff


By: /s/ Anthony M. Rainone
      Anthony M. Rainone, Esq


## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or the subject of any pending arbitration or administrative proceeding.

**BRACH EICHLER LLC**
Attorneys for Plaintiff


By: /s/ Anthony M. Rainone
      Anthony M. Rainone, Esq.

Dated: May 10, 2018